IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No.  12-cv-03322-LTB

MIDCITIES METROPOLITAN DISTRICT NO. 1, a Quasi-Municipal Corporation and Political
Subdivision of the State of Colorado,

      Plaintiff,

v.

U.S. BANK NATIONAL ASSOCIATION, a National Banking Association,

      Defendant.

_____

# ORDER
_____

      This matter is before me on a Motion to Dismiss filed by Defendant, U.S. Bank National

Association ("US Bank"), seeking dismissal of the claims asserted against it by Plaintiff,

MidCities Metropolitan District No. 1 ("MidCities"), for failure to state a claim upon which

relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). [**Doc # 9**] Oral arguments would not

materially aid in my determination of this motion.  After consideration of the parties briefs and

arguments, I GRANT IN PART and DENY IN PART the motion as follows.

## I. FACTS

      In its complaint, MidCities alleges that it is a special district (a quasi-municipal

corporation and political subdivision of the State of Colorado) organized under Colo. Rev. Stat.

§32-1-101, *et seq*., which provides services – such as sewer and water systems – to real property

owners within its boundaries.  The MidCities district consists of property adjacent to the

Flatirons Mall located in Broomfield, Colorado.

At issue in this case is a Special Warranty Deed (the "Deed") dated August 21, 2001, related to 8.1 acres of real property located within the district boundaries.  In the Deed, the original developer and Grantor, Coalton Acres, LLC, granted the property at issue to the original Grantee, Heritage Bank.  Section 2.1 of the Deed – entitled Grantee's Covenant as to Sales Tax Revenue: – requires the following:

> (a)  Grantee covenants and agrees that Grantee shall pay to MidCities . . . for every calendar year, during the term of this covenant, commencing with the calendar year 2003, . . . the remainder of (i) $350,000 minus (ii) one-half (½) of a three and one-half percent (3.5%) sales tax collected by the City from the Property for the year (the "Shortfall Amount").

Section 2.1(b) provides that the Shortfall Amount shall be paid to MidCities on or before March 31st of each calendar year, and Section 2.1(c) provides that the obligation to pay the Shortfall Amount shall continue until the bond obligations and amounts due in repayment of developer guarantees are made.  MidCities alleges that in November 2004, the original Grantor (Coalton Acres) assigned its rights under the Deed to MidCities.

In 2007, First Community Bank acquired Heritage Bank.  Thereafter, in January 2011, First Community Bank was placed into receivership by the Federal Deposit Insurance Corporation (the "FDIC").  And, although it appears to be disputed, MidCities alleges that U.S. Bank then acquired the property at issue from the FDIC upon execution of a Purchase and Assumption Agreement, dated January 28, 2011.  MidCities refers to Section 3.1 of that Purchase Agreement, which states that US Bank "hereby purchases from the Receiver, and Receiver hereby sells, assigns, transfers and delivers to [US Bank], all right, title and interest of the Receiver in and to all of the assets (real, personal and mixed, wherever located and however acquired) . . . of the Failed Bank."   As such, MidCities asserts that US Bank – as Heritage

Bank's successor and current owner of the property, and by virtue of the express terms of the

Purchase Agreement – is obligated to pay the Shortfall Amount set forth in Section 2.1(a) of the

Deed.  Despite numerous demands, US Bank has failed to pay MidCities in 2011 and 2012.

As a result, MidCities filed this lawsuit in November 2012, in the District Court for the

City and County of Broomfield, seeking payment of the Shortfall Amount due, and a declaration

that US Bank is liable to pay it in the future.  MidCities asserts four claims for relief:  (1) Breach

of Contract; (2) Unjust Enrichment; (3) Declaratory Judgment; and (4) Injunctive Relief.  US

Bank subsequently removed the case from state court to this court, by filing a Notice of Removal

on December 21, 2012, on the basis of diversity jurisdiction of this action pursuant to 28 U.S.C.

§1332(a). [Doc #1]  US Bank then filed this motion seeking dismissal of MidCities' claims

against it for failure to state a claim.

## II.  STANDARD OF REVIEW

Fed. R. Civ. P. 12(b)(6) states that a court may dismiss a complaint for "failure to state a

claim upon which relief can be granted."  To withstand a motion to dismiss, a complaint must

contain enough allegations of fact "to state a claim to relief that is plausible on its face."  *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007).

"While a [pleading] attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

allegations, . . . a [party's] obligation to provide the 'grounds' of his 'entitlement to relief'

requires more than labels and conclusions, and a formulaic recitation of the elements of a cause

of action will not do."  *Id.* 550 U.S. at 556 (citations omitted).  "Factual allegations must be

enough to raise a right to relief above the speculative level."  *Id.; see also Ridge at Red Hawk,*

*L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

In deciding a Rule 12(b)(6) motion to dismiss, I am to assume as true all well-pleaded factual allegations and view them in the light most favorable to the nonmoving party. *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009); *Schwartz v. Booker*, 702 F.3d 573, 579 (10th Cir. 2012). However, "when legal conclusions are involved in the complaint 'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to [those] conclusions.'" *Khalik v. United Airlines*, 671 F.3d 1188, 1190 (10th Cir. 2012)(*quoting Ashcroft v. Iqbal*, *supra*, 556 U.S. at 677). "Accordingly, in examining a complaint under Rule 12(b)(6), [the court] will disregard conclusory statements [of law] and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Id.*

## III. LAW

MidCities claims that Section 2.1 of the Deed is a real covenant that runs with the property at issue and therefore binds the owner thereof, US Bank, to pay the Shortfall Amount. US Bank, in response, argues that Section 2.1 is not a real covenant that runs with the land, but rather is a personal covenant that does not run with the property and, as such, does not obligate it to pay.

As an initial matter, I note that because this Court is sitting in diversity-based jurisdiction, I apply the substantive law of Colorado as the forum state. *See Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Essex Ins. Co. v. Vincent*, 52 F.3d 894, 896 (10th Cir. 1995). I further note that Section 4.6 of the Deed provides that it "shall be interpreted and enforced according to the laws of the State of Colorado."

4

Personal covenants operate like general contract provisions that obligate only the contracting parties. *Cloud v. Ass'n of Owners, Satellite Apt. Bldg., Inc*., 857 P.2d 435, 440 (Colo. App. 1992). Unlike personal covenants, which bind only the actual parties to the covenant, real covenants "run with the land" and burden or benefit successors in interest. *Lookout Mountain Paradise Hills Homeowners' Ass'n v. Viewpoint Associates,* 867 P.2d 70, 74 (Colo. App. 1993)(*citing Cloud v. Ass'n of Owners, supra,* 857 P.2d at 440). In order for a covenant to run with the land, the parties to the covenant must intend that it do so. *Lookout Mountain v. Viewpoint, supra,* 867 P.2d at 74 (*citing Brown v. McDavid,* 676 P.2d 714 (Colo. App. 1983)). In addition, the covenant must "touch and concern" the land. *Id.* (*citing Bigelow v. Nottingham*, 833 P.2d 764 (Colo. App. 1991)). That is, it must closely relate to the land, its use, or its enjoyment. *Cloud v. Ass'n of Owners, supra*, 857 P.2d at 440. Whether a covenant runs with the land turns on the construction of relevant documents. *Lookout Mountain v. Viewpoint, supra,* 867 P.2d at 74.

The "dictates of plain English" must guide the interpretation of a restrictive covenant. *B.B. & C. Partnership v. Edelweiss Condominium Ass'n,* 218 P.3d 310, 315 (Colo. 2009)(*citing Buick v. Highland Meadow Estates,* 21 P.3d 860, 862 (Colo. 2001)). If it is clear on its face, courts will enforce a covenant as written. *Id.* "We construe covenants as a whole, keeping in mind their underlying purpose." *Id.* Only when the language of a covenant is unclear will the court resort to rules of interpretation and, in that event, "courts resolve all doubts against the restriction and in favor of free and unrestricted use of property." *K9Shrink, LLC v. Ridgewood Meadows Water and Homeowners Ass'n,* 278 P.3d 372, 377 (Colo. App. 2011)(*quoting B.B. & C. P'ship v. Edelweiss, supra,* 218 P.3d at 315). If a document such as a deed is unambiguous

on its face, the nature and extent of the interest contained in it must be determined without regard

to extrinsic evidence.  *O'Brien v. Village Land Co.*, 794 P.2d 246 (Colo. 1990).

## IV.  DEED PROVISIONS

US Bank argues that MidCities has failed to state claim upon which relief can be granted

because all of its asserted claims – for breach of contract and declaratory/injunctive relief or,

alternatively, unjust enrichment – are premised on the faulty legal conclusion that Section 2.1 is

a real covenant that runs with the land which, in turn, obligates future property owners.  US

Bank asserts that the plain and unambiguous language of the Deed shows that Section 2.1 is

merely a personal covenant that served only to bind the original Grantee, and it not a real

covenant that runs with the land.

## ARTICLE 1

Article 1 of the Deed is entitled "RESTRICTIONS," and Section 1.1 provides as follows:

Intent as to Restrictions. The Property is conveyed and this conveyance is
accepted subject to and upon the following express terms, covenants, conditions
and restrictions (collectively, the **Restrictions**), which Restrictions are made for
the benefit of Grantor, its successors and assigns, and for the benefit of lands in
the area of the City of Broomfield . . . as described in the Master Declaration
(defined below), which are now or hereafter owned by Grantor and its successors
and assigns, and which Restrictions impose a burden on the Property. Execution
of this Deed by Grantee shall constitute the agreement by Grantee, for itself and
its successors and assigns, to be bound by and to comply with the following
Restrictions.  [Bold in original]

The remaining sections in Article 1 (Sections 1.2 through 1.25) set out various specific

restrictions or limitations on the property such as:  Limitations On Use (Section 1.2); Right of

First Offer (Section 1.17); and Environmental Compliance and Indemnity (Section 1.23).  These

Restrictions – as defined – "impose a burden on the Property" which serve to benefit the Grantor its successors and assigns, bind the Grantee and its successors and assigns.

## ARTICLE II

The portion of the Deed that addresses the Shortfall Amount – Section 2.1 entitled Grantee's Covenant as to Sales Tax Revenue – is not contained within Article 1, but instead is set forth in Article II entitled "GRANTEE'S COVENANT."   Section 2.1 is the only section contained within Article II, and provides, in its entirety,  as follows:

ARTICLE II

GRANTEE'S COVENANT

2.1   Grantee's Covenant as to the Sales Tax Revenue.

(a)  Grantee covenants and agrees that Grantee shall pay to MidCities Metropolitan District No. 1 for every calendar year, during the term of this covenant, commencing with the calendar year 2003 (thus the first payment shall be due on or before March 31, 2004), the remainder of (i) $350,000 minus (ii) one-half (½) of a three and one-half percent  (3.5%) sales tax collected by the City from the Property for the year (the "Shortfall Amount").

(b)  The Shortfall Amount shall be paid to the MidCities Metropolitan District No. 1 on or before March 31 of each calendar year.

(c)  The obligation of Grantee to pay the Shortfall Amount shall continue until such time as the MidCities Metropolitan District No. 1 has repaid (I) all MidCities Metropolitan District No. 1 bond obligations and (ii) all amounts due in repayment of developer guarantees on any bond obligations.

(d)  When the obligations referred to in Section 2.1(c) above have been satisfied, Grantor, within thirty (30) days after receipt by Grantor of a written request by Grantee, shall deliver to Grantee a release of this covenant, properly executed and acknowledged in recordable form.

(e)  Grantor and Grantee agree that the MidCities Metropolitan District No. 1 is a third party beneficiary of the terms and provisions of this Section 2.1 and the terms and provisions of

7

this Section 2.1 shall be assigned to the MidCities Metropolitan District No. 1 for the purpose of enforcing or pledging the Shortfall Amount(s).

(f)  Grantor shall have all remedies in law or equity to enforce Grantee's obligation to pay timely the Shortfall Amount.

(g)  In the event Grantee has satisfied the conditions set forth in Section 1.2(a) through (e), the Condominium Units shall be released from any obligation to pay any portion of the Shortfall Amount, if any.

## ARTICLE III

Article III of the Deed is entitled "DEFAULT AND ENFORCEMENT," and neither

party contends its provisions are specifically applicable here.

## ARTICLE IV

Finally, Article IV is entitled GENERAL, and contains general provisions such as

duration of the Deed, and notice requirements.  Section 4.4 of this Article provides as follows:

4.4  Binding Effect.  This Deed shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns. The Restrictions contained in this Deed shall be construed as covenants running with the Property, and every person who now or hereafter owns or acquires any right, title, estate or interest in or to the Property is and shall be conclusively deemed to have consented to and to have agreed to every Restriction contained in this Deed, whether or not any reference to the Restrictions is contained in the instrument by which such person acquires an interest in the Property.

## V. ANALYSIS

In its motion, US Bank asserts that it is unambiguous that Section 2.1 – which sets forth

the terms of the payment of the Shortfall Amount to MidCities – is a personal convent that binds

only the original Grantee and not the future property owners.  In making this argument, US Bank

notes that Article 1 (entitled "RESTRICTIONS") provides, in Section 1.1, that conveyance of

the property "is accepted subject to and upon the following express terms, covenants, conditions

and restrictions (collectively, the **Restrictions**), . . . which Restrictions impose a burden on the

Property."  The term "Restrictions" is both capitalized and bolded.  Section 1.1 further provides

that "[e]xecution of this Deed by Grantee shall constitute the agreement by Grantee, for itself

and its successors and assigns, to be bound by and to comply with the following Restrictions."

Article 1 then enumerate fourteen separate specific "Restrictions" that constitute real covenants

clearly intended to run with the land, and obligate future owners, by imposing a burden on the

property.   As such, it is evident that the parties knew how to create a real covenant and, if

necessary, limit such covenants.  *See e.g.* Section 1.17(d)(providing that the Right of First Offer

"runs with and burdens the Property" but that it is limited "for so long as the Grantee is the fee

owner of the Property or has an ownership interest . . .").   US Bank contends, accordingly, that

it is clear that the parties intended the Restrictions contained in Article 1 to be real covenants that

run with the land and serve to bind future owners of the property.

      U.S. Bank further argues that the obligation set forth in Article II/Section 2.1 – which

provides the terms of payment of the Shortfall Amount to MidCities – is conspicuously absent

from the "Restrictions" listed in Article 1, and instead is contained in Article II, which is titled

"Grantee's Covenant," not a "Restriction."  US Bank asserts that while Article 1 states that its

"Restrictions" are real property interests that run with and burden the property – in more than

one instance – there is no similar language in Article II.  US Banks further notes that Section

2.1(f) provides a specific remedy for a breach of the Shortfall Covenant – it gives the Grantor

"all remedies in law or equity to enforce Grantee's obligation to pay timely the Shortfall

Amount" – while Article III of the Deed provides independent remedies for a breach of any of

the "Restrictions."   As such, US Bank maintains that the "Restrictions" in Article 1 are the sole covenants the Deed intended to bind successors and assigns, and Article II, in contrast, is entitled a "Grantee's Covenant" and nothing therein states (or even suggests) that it was intended to be a real covenant that binds successors in title.

MidCities argues, in response, that the language of the Deed does not limit the term "Restrictions" to those listed in Article 1.  MidCities refers to Section 4.4 – which is contained in Article IV entitled "GENERAL" – and states that "[t]he Deed shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns. The *Restrictions* contained in this Deed shall be construed as covenants running with the Property, and every person who now or hereafter owns or acquires any right, title, estate or interest in or to the Property is and shall be conclusively deemed to have consented to and to have agreed to every *Restriction* contained in this Deed . . ." (emphasis supplied).   As such, MidCities contends that Section 4.4 applies to *all* the covenants contained in the Deed – both the ones set forth in Article 1 and, as relevant here, the Grantee's Covenant set forth in Article II.   MidCities noted that the Deed consistently refers to the "Restrictions in this Deed," rather than to the "Restrictions contained in Article 1," and that there is no separate definition for covenant or "Grantee's Covenant."   It also argues, without specificity, that many of the miscellaneous provisions refer to "Restrictions" when applying to all the terms of the Deed, including Article II.   Thus, it asserts that "it is apparent that the parties intended [the Shortfall Amount obligation contained in Section 2.1] to be included within the definition of 'Restrictions' and thus considered a 'covenant running with the Property'" as set forth in Section 4.4.   Finally, MidCities make several arguments, based on extrinsic evidence, that it claims supports its contention that the

10

parties intended the obligation of in Section 2.1 continue to bind successive property owners.

In this motion to dismiss for failure to state a claim, I need not weigh or assess whether MidCities has alleged facts sufficient to raise plausible claims for the relief sought, but rather I am to make legal determination by interpretation of the Deed; specifically, whether the Deed is unambiguous that the Shortfall Amount is a real covenant or a personal covenant.  I agree with US Bank that the Deed unambiguously provides for real convents – as specifically defined as the "Restrictions" therein listed in Article 1 – and that the Shortfall Amount at issue here, contained in Section 2.1, is not such a Restriction, but us instead is a personal covenant between the Grantor and Grantee to the Deed.

Contrary to MidCities argument, there is no language in the Deed that reveals that the parties intended for the Shortfall Amount to be a real covenant that runs with the property.  As discussed above, the "Restrictions" are a defined term – capitalized and bolded – at the beginning of Article 1 and then, following that, fourteen separate specific "Restrictions" are listed.  It is clear from the language in Article 1 – in Section 1.1 – that these fourteen Restrictions are real covenants that "impose a burden on the Property" and that "[t]he Deed shall constitute the agreement by Grantee, for itself and its successors and assigns, to be bound by and to comply with the following Restrictions."  The covenant at issue here – the Shortfall Amount in Section 2.1 – is not listed within those Restrictions, but instead stands alone in a separate article.  It is never referred to as a "Restriction" therein; it is entitled "Grantee's Covenant," and is specifically defined as the "Shortfall Amount" or is referred to as "Grantee's obligation to pay." As such, I reject MidCities' argument that the Deed defines "Restrictions" as including covenants – in both Section 1.1 and Section 4.4 – and, thus, it also encompasses the Grantees'

11

Covenant (or "Shortfall Amount") contained within Section 2.1.

For the same reasoning, I likewise reject Midcities' argument that Section 4.4 – in Article IV entitled GENERAL – not only applies to the Restrictions contained in Article 1, but likewise applies to the obligation to pay the Shortfall Amount set forth in Section 2.1.  Section 4.4 reiterates that "[t]he Restrictions contained in this Deed shall be construed as covenants running with the Property, and every person who now or hereafter owns or acquires any right, title, estate or interest in or to the Property is and shall be conclusively deemed to have consented to and to have agreed to every Restriction contained in this Deed . . .".   While this language broadly includes *every* Restriction, I am again bound by the unambiguous definition of "Restrictions" as contained in Article 1 which, I have determined, is plainly limited and does not include the Shortfall Amount obligation contained in Section 2.1.

Therefore, as a matter of law, I find that the Deed is unambiguous that the Grantees' Covenant contained in Section 2.1 is merely a personal covenant and does not run with the land. As a result, I agree with US Bank that MidCities' contract-based claims – for breach of contract, declaratory relief and injunctive relief – must be dismissed as each of those claims are predicated on a faulty legal proposition.

## VI.  UNJUST ENRICHMENT CLAIM

As to the remaining quasi-contract claim, US Bank contends that MidCities' unjust enrichment claim – in which it argues that it is entitled to equitable damages from US Bank's failure to pay the Shortfall Amount – also rests on the legal conclusion that the property is encumbered by the covenant or obligation contained in Section 2.1 and, as such, it must be dismissed for failure to state a claim.  MidCities argues that the claim survives, however,

12

because its complaint states a cause of action for unjust enrichment.  I agree with MidCities.

In its complaint, MidCities alleges that the benefit of real property ownership was conferred upon US Bank, that it appreciated a benefit in the form of its enjoyment and ownership of the real property at issue, and that the property is encumbered by the covenant in Section 2.1, intended to benefit MidCities, "and it would therefore be unjust an inequitable if [US Bank] were not required to pay the annual Shortfall Amount."  As a result, MidCities averred that it is entitled to judgment for the amount of the benefit conferred.  This claim alleges the necessary elements of the claim of unjust enrichment.  *See Robinson v. Colorado State Lottery Div.,* 179 P.3d 998, 1007 (Colo. 2008)(ruling that recovery under an unjust enrichment theory requires a showing that (1) at the plaintiff's expense (2) the defendant received a benefit (3) under circumstances that would make it unjust for the defendant to retain the benefit without paying)(citations omitted).

Moreover, assuming Midcities' allegations to be true, and construing them in the light most favorable to it, I find them adequate to make out a plausible claim for unjust enrichment.  It its complaint, Midcities avers that US Bank owns the subject property located within its boundaries.  In addition, it asserts that the Shortfall Amount was included in the Deed in order to provide MidCities with revenue necessary to provide property owners within its boundaries – including US Bank – with services such as streets and drainage, traffic and safety controls, parks and recreation, and sanitation and water systems.  The Shortfall Amount has not been paid for two (and, presumptively, three) years and that there has been no sales tax revenue collected – as the property remains undeveloped – to offset the $350,000 intended to pay for the services to be provided by MidCities.  Such facts, when viewed as true and in combination with the allegations

13

of the elements, are sufficient to raise a plausible claim of unjust enrichment against US Bank.

In addition, I reject US Bank's argument that the unjust enrichment claim must be dismissed on the basis that an express contract applies and Colorado law provides that an unjust enrichment claim that covers the same subject matter is prohibited, as a matter of law, because the express contract precludes any implied-in-law contract. In so arguing, US Bank relies on *Interbank Investments, LLC v. Eagle River Water and Sanitation Distr.*, 77 P.3d 814, 816 (Colo. App. 2003), in which a panel of the Colorado Court of Appeals stated that "[i]n general, a party cannot recover for unjust enrichment by asserting a quasi-contract when an express contract covers the same subject matter because the express contract precludes any implied-in-law contract." *Id.; see also Echostar Satellite, L.L.C. v. Splash Media Partners, L.P.,* 2010 WL 3873282 (D.Colo. 2010)(unpublished)(entering summary judgment in favor of the defendant because there was an express contract covering the same subject matter as the unjust enrichment claim).

There are several reasons why this principle does not apply to this case to foreclose MidCities' unjust enrichment claim as a matter of law. First, US Bank is not a party to the applicable express contract as I have determined that the obligation in Section 2.1 is between the original Grantor and Grantee to the Deed. *See generally Robert W. Thomas and Anne McDonald Thomas Revocable Trust v. Inland Pacific Colorado, LLC*, 2012 WL 2190852 (D. Colo. 2012) (denying a motion to dismiss the unjust enrichment claims alleged against a defendant who was found to not be a party to the express contract); *Harris Group, Inc. v. Robinson*, 209 P.3d 1188, 1205 (Colo. App. 2009)(noting that unjust enrichment is a form of quasi-contract, implied by law, that does not rely upon a promise between parties). In addition, the principle that an express

14

contract precludes an unjust enrichment claim may be limited in applicability to the case in which such claims are alternatively pled, which is now no longer the case here. *See Thomas Revocable Trust v. Inland Pacific, supra.*

Moreover, Colorado recognizes two exceptions to the principle at issue. The first exception, not applicable here, provides that a party can recover on a quasi-contract when it covers conduct outside the express contract or matters arising subsequent to the express contract. *Interbank Investments v. Eagle River Water, supra,* 77 P.3d at 816 (*citing Scott Co. v. MK–Ferguson Co.*, 832 P.2d 1000 (Colo. App. 1991)). Second, a party can recover on a quasi-contract when the party will have no right under an enforceable contract. *Interbank Investments v. Eagle River Water, supra,* 77 P.3d at 816 (*quoting Backus v. Apishapa Land & Cattle Co.*, 44 Colo.App. 59, 62, 615 P.2d 42, 44 (1980)). I have ruled that MidCities has no right to recovery under Section 2.1 against US Bank, and MidCities avers that there have no right to recovery under Section 2.1 against the original Grantee – Heritage Bank. As such, at this point in the litigation, it appears that MidCities may not have a right under an enforceable contract. *See Interbank Investments v. Eagle River Water, supra,* 77 P.3d at 816 (*citing Dudding v. Norton Frickey & Assocs.*, 11 P.3d 441 (Colo. 2000); *Alien, Inc. v. Futterman*, 924 P.2d 1063 (Colo. App.1995))(an exception is present where the express contract is unenforceable such as "when an express contract failed or was rescinded").

ACCORDINGLY, I GRANT the Motion to Dismiss filed by Defendant, U.S. Bank National Association to the contract-based claims asserted against it by Plaintiff, MidCities Metropolitan District No. 1, on the basis that Plaintiff has, as a matter of law, failed to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).  As such, I DISMISS WITH PREJUDICE Plaintiff's First (Breach of Contract), Third (Declaratory Judgment), and Fourth (Injunctive Relief) Claims for Relief.  I DENY the reminder of the motion.

Dated: June   24  , 2013 in Denver, Colorado.

BY THE COURT:

   s/Lewis T. Babcock
LEWIS T. BABCOCK, JUDGE