IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No. 12-cv-03322-LTB-BNB

MIDCITIES METROPOLITAN DISTRICT NO. 1, a Quasi-Municipal Corporation and
Political Subdivision of the State of Colorado,

    Plaintiff,

v.

U.S. BANK NATIONAL ASSOCIATION, a National Banking Association,

    Defendant.

___

MEMORANDUM OPINION AND ORDER
___

Babcock, J.

This matter is before me on a Motion for Leave to File Amended Complaint filed by Plaintiff, MidCities Metropolitan District No. 1 ("MidCities"), seeking leave to amend its complaint to add a breach of contract claim against Defendant, U.S. Bank National Association ("USBank"), who opposes this request. **[Doc #29]**  Oral arguments would not materially aid in my determination of this motion.  After consideration of the parties briefs and arguments, I DENY the motion as follows.

## I. FACTS

MidCities is a special district (a quasi-municipal corporation and political subdivision of the State of Colorado) organized under Colo. Rev. Stat. §32-1-101, *et seq.*, which provides services – such as sewer and water systems – to owners of real property located within its boundaries.  The MidCities district consists of property adjacent to the Flatirons Mall located in Broomfield, Colorado.

On August 21, 2001, Coalton Acres, LLC (the original developer and Grantor) granted 8.1 acres of real property located within the district boundaries to the original Grantee, Heritage Bank, via a Special Warranty Deed. Section 2.1 of the Deed – entitled <u>Grantee's Covenant as to Sales Tax Revenue</u>: – requires the following:

> (a) Grantee covenants and agrees that Grantee shall pay to MidCities . . . for every calendar year, during the term of this covenant, commencing with the calendar year 2003, . . . the remainder of (i) $350,000 minus (ii) one-half (½) of a three and one-half percent (3.5%) sales tax collected by the City from the Property for the year (the "Shortfall Amount").

Section 2.1(b) provides that the Shortfall Amount shall be paid to MidCities on or before March 31st of each calendar year, and Section 2.1(c) provides that the obligation to pay the Shortfall Amount shall continue until the bond obligations and amounts due in repayment of developer guarantees are made. MidCities alleges that in November 2004, the original Grantor (Coalton Acres) assigned its rights under the Deed to MidCities.

Heritage Bank paid the Shortfall Amount set forth in Section 2.1(a) of the Deed until 2007, when First Community Bank acquired Heritage Bank. Thereafter, First Community Bank paid the Shortfall Amount until it was placed into receivership by the Federal Deposit Insurance Corporation (the "FDIC") in January 2011. MidCities alleges that USBank then acquired the property at issue from the FDIC upon execution of a Purchase and Assumption Agreement, dated January 28, 2011 (the "P&A Agreement").

MidCities' position is that USBank is now obligated to pay the Shortfall Amount and, despite numerous demands, USBank has failed to pay. As a result, MidCities filed this lawsuit in the District Court for the City and County of Broomfield, seeking payment of the Shortfall Amount due, and a declaration that USBank is liable to pay it in the future. USBank

subsequently removed the case from state court to this court, by filing a Notice of Removal on December 21, 2012, on the basis of diversity jurisdiction under 28 U.S.C. §1332(a).

USBank then filed a motion seeking dismissal of MidCities' claims against it for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).  On June 24, 2013, I ruled in favor of USBank on MidCities' claims seeking relief for Breach of Contract, Declaratory Judgment, and Injunctive Relief, which were brought on the theory that Section 2.1 of the Deed is a real covenant that runs with the land.  I rejected this theory, and instead ruled that Section 2.1 was a personal covenant that did not run with the land.  As such, I determined that MidCities' contract-based claims, which sought to enforce the provisions contained in Section 2.1 of the Deed against USBank (as the current owner of the property), were not cognizable as predicated on a faulty legal theory.  I further ruled, however, that MidCities stated a claim for Unjust Enrichment, precluding dismissal of the case. [Doc # 18]

Almost six months later, on December 6, 2013, MidCities filed the motion at issue here seeking leave to amend its complaint.  Specifically, it seeks to add another breach of contract claim based on the new legal theory that USBank expressly assumed all duties and obligations related to the property – including paying the Shortfall Amount pursuant to Section 2.1 of the Deed – in its P&A Agreement with the FDIC.  Because MidCities is both an express beneficiary under the Deed, and an assignee under the covenant, it argues that it is entitled to enforce the contractual obligations assumed by USBank in the P&A Agreement with the FDIC.  MidCities contends that USBank's failure to pay the Shortfall Amount results in breach and damages.  MidCities now seeks to amend its complaint to include this new breach of contract claim against USBank. [Doc # 29-1]

## II. LAW

Pursuant to Fed.R.Civ.P. 15, a plaintiff may amend its complaint after the defendant has answered only with leave of court. *See* Fed.R.Civ.P. 15(a)(2)(after a responsive pleading has been served, "a party may amend its pleadings only with the opposing party's written consent or the court's leave"). The Court has the discretion whether to grant a motion seeking leave to amend, and leave should be freely granted where justice requires. *Id.*; *Anderson v. Merrill Lynch Pierce Fenner & Smith Inc.*, 521 F.3d 1278, 1288 (10th Cir. 2008). The Court may exercise its discretion to deny a motion to amend upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by previously allowed amendments, or futility of the amendment. *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993).

USBank argues that this motion to amend, under the circumstances, is untimely and creates undue prejudice. USBank also argues that I should not allow MidCities to allege the new breach of contract claim because such claim is not cognizable and, as such, allowing it would be futile.

## III. ANALYSIS

MidCities' new breach of contract claim is based on its allegation – set forth in its proposed amended complaint – that USBank contractually assumed the obligation to pay the Shortfall Amount in Section 2.1 of the Deed, via its P&A Agreement with the FDIC. In so doing, MidCities first alleges that it is an express beneficiary to Section 2.1 of the Deed and, in addition, that Coalton Acres explicitly assigned/transferred to MidCities the terms and provisions in Section 2.1 in a written Assignment dated November 30, 2004. [Doc # 29-1 ¶¶14-

19]

MidCities then alleges that the FDIC assumed Section 2.1 following its appointment as the Receiver of First Community Bank.  Specifically, MidCities notes that it submitted a Proof of Claim to the FDIC – on or about April 5, 2011 – seeking payment of the Shortfall Amount in Section 2.1. [Doc # 29-1 ¶24]  In response, the FDIC did not disaffirm the obligation in Section 2.1, but instead denied that it was responsible for MidCities' claim for payment on the basis that "[t]he property has passed to the Assuming Institution, USBank . . . ". [Doc # 29-1 ¶24&25]  As a result, MidCities argues that the FDIC's conditional denial constitutes evidence that the FDIC assumed the obligation to pay the Shortfall Amount when it was appointed Receiver of First Community Bank.  Because the FDIC denied MidCities' claim seeking payment of the Shortfall Amount on the basis that the property at issue "has passed to the Assuming Institution, USBank," MidCities avers that the FDIC "communicated" that the obligation under Section 2.1 of the Deed is a "Related Liability" as set forth and defined in §1.3(iii) of the P&A Agreement between the FDIC and USBank as "any other obligation determined by the Receiver to be directly related to such Asset." [Doc # 29-1 ¶28]  As such, MidCities asserts in its new breach of contract claim that USBank "has assumed [the obligation in Section 2.1 via the P&A Agreement] and is therefore obligated to pay the Shortfall Amount for each year that it has owned and continues to own" the property at issue. [Doc # 29-1 ¶20]

**A.  Untimely & Prejudicial**

In response to the request to amend, USBank argues – and I agree – that under the circumstances here, MidCities' request should be denied as both untimely and prejudicial.

As a general rule, "[l]ateness does not of itself justify the denial of the amendment." *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1205 (10th Cir. 2006). However, "untimeliness alone [can be] a sufficient reason to deny leave to amend, especially when the party filing the motion has no adequate explanation for the delay." *Pallottino v. City of Rio Rancho*, 31 F.3d 1023, 1027 (10th Cir. 1994). In assessing undue delay, "[t]his Circuit focuses primarily on the reasons for the delay" and has held that denial of leave to amend is appropriate "when the party filing the motion has no adequate explanation for the delay." *Minter v. Prime Equip., supra,* 451 F.3d at 1206 (*quoting Frank v. U.S. West*, *supra*, 3 F.3d at 1365-6). Furthermore, I note that the longer the delay in filing the motion to amend, "the more likely the motion to amend will be denied, as protracted delay, with its attendant burdens on the opponent and the court, is itself a sufficient reason for the court to withhold permission to amend." *Minter v. Prime Equip., supra,* 451 F.3d at 1205 (citations omitted)(ruling that "a party who delays in seeking an amendment is acting contrary to the spirit of the rule and runs the risk of the court denying permission because of the passage of time").

Here, MidCities attempts to bring another breach of contract claim based on a different legal theory. MidCities does not explain its reasons for advancing this new theory at this late point, or for the delay, but instead argues that it has asserted a viable alternative theory of recovery and that it was not acting in bad faith. While the request to amend was filed nine days prior to the expiration of the deadline for amending, set forth in the Scheduling Order [Doc # 26], it was over six months after I dismissed their initial breach of contract claim. The proposed amendment was not based on facts that were unavailable at the time the complaint was filed, but instead advances an alternate legal theory that MidCities did not choose to bring until after

USBank successfully demonstrated that its original legal theory was fatally flawed, warranting dismissal for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

"Where the party seeking amendment knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend is subject to denial." *Pallottino v. City of Rio Rancho, supra,* 31 F.3d at 1027 (quotation and citation omitted). Likewise, where the plaintiff seeks to amend the complaint to assert an alternative theory based on evidence already known, the court "need not allow itself to be imposed upon by the presentation of theories *seriatim*." *Id*. "Liberality in amendment is important to assure a party a fair opportunity to present [its] claims and defenses, but equal attention should be given to the proposition that there must be an end finally to a particular litigation." *Id.* (quotations and citations omitted)(holding that a plaintiff was not entitled to amend his complaint after his existing claims were dismissed pursuant to an adverse summary judgment ruling).

As such, I find that the request to amend in this case is not timely. *See Fed. Ins. Co. v. Gates Learjet Corp.,* 823 F.2d 383, 387 (10th Cir. 1987)("Courts have denied leave to amend in situations where the moving party cannot demonstrate excusable neglect. For example, courts have denied leave to amend where the moving party was aware of the facts on which the amendment was based for some time prior to the filing of the motion to amend"); *see also Smith v. Aztec Well Serv. Co.*, 462 F.3d 1274, 1285 (10th Cir. 2006); *Pallottino v. City of Rio Rancho, supra,* 31 F.3d at 1027.

In addition, I agree with USBank that allowing MidCities' proposed amendment would cause undue prejudice. Under Fed.R.Civ.P. 15(a), undue prejudice means undue difficulty in

prosecuting or defending a lawsuit as a result of a change of tactics or theories on the part of the plaintiff. *Minter v. Prime Equip., supra,* 451 F.3d at 1208; *see also Jones v. Wildgen*, 349 F.Supp.2d 1358, 1361 (D. Kan. 2004)(citations omitted). While any amendment invariably causes some "practical prejudice," leave to amend may be denied when the amendment "would work an injustice to the defendants." *Koch v. Koch Indus.*, 127 F.R.D. 206, 209–10 (D. Kan.1989)(citations omitted). According to the Tenth Circuit, undue prejudice is the most important factor in deciding a motion to amend. *See Minter v. Prime Equip., supra,* 451 F.3d at 1207.

While the amendment proposed by MidCities does not assert any alterations to the underlying facts, or change the ultimately recovery sought, the theory of recovery on the breach of contract claim is vastly different. I agree with USBank that MidCities' attempt to revive its breach of contract claim under a different theory, after its first theory was rejected on a motion to dismiss for failure to state a claim, creates undue prejudice to USBank. *See Minter v. Prime Equip., supra,* 451 F.3d at 1208 (ruling that a change of tactics or theories on the part of the plaintiff resulting in difficulty in defending a lawsuit creates undue prejudice). As such, I conclude that MidCities' request for leave to amend is denied, pursuant to Fed.R.Civ.P. 15(a)(2), as both unduly prejudicial and untimely.

**B. Futility - Lack of Standing**

USBank also argues that MidCities' new breach of contract claim fails to state a viable claim, as a matter of law, and thus should be denied as futile. Because I agree that MidCities lacks standing to bring its new breach of contract claim against USBank – based on its P&A Agreement with the FDIC – I conclude that even if the motion to amend was timely and not

prejudicial, it should be denied as futile.

"A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Anderson v. Merrill Lynch, supra*, 521 F.3d at 1288; *see also Jefferson County Sch. Dist. v. Moody's Investor's Services*, 175 F.3d 848, 859 (10th Cir. 1999). A proposed amendment to a complaint is futile if it would be subject to dismissal for any reason, including that the amendment would not survive a motion for summary judgment or a motion to dismiss. *See Watson ex rel. Watson v. Beckel*, 242 F.3d 1237, 1239 (10th Cir. 2001); *Gohier v. Enright*, 186 F.3d 1216, 1218 (10th Cir.1999). The grant or denial of a motion to amend is within the sound discretion of the trial court. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

In its proposed amended complaint, MidCities avers that it is both "an express beneficiary under the Deed and an assignee under [Section 2.1]" and it argues that it "is entitled to enforce its contractual rights under the Deed." [Doc # 29-1 ¶40] Because MidCities had not been paid pursuant to Section 2.1 of the Deed, MidCities claims that USBank's "breach of the [P&A] Agreement has resulted in damages to MidCities." [Doc # 29-1 ¶42]

In response to the request to amend, USBank asserts that MidCities' new claim is not cognizable because MidCities lacks standing to bring a breach of contract claim against USBank based on its P&A Agreement with the FDIC. Specifically, it asserts that non-parties to an FDIC purchase and assumption agreement do not have standing to enforce its terms or to pursue litigation based on the rights claimed to be afforded by such agreement; rather third parties to Government contracts are presumed to be, at most, incidental beneficiaries who lack standing absent a clear intent that they be permitted to enforce the terms of the contract. In so arguing,

USBank refers to the provision of the P&A Agreement that specifically provides that "nothing expressed or referred to in this Agreement is intended or shall be construed to give any Person other than the [FDIC], the Corporation and [USBank] any legal or equitable right, remedy or claim under or with respect to this Agreement . . .".

The issue of whether a creditor of a failed bank has standing to assert claims against an assuming bank, under a FDIC purchase and assumption agreement, has not been addressed in this Circuit. In *Interface Kanner, LLC v. JPMorgan Chase Bank*, 704 F.3d 927 (11th Cir. 2013), a plaintiff/lessor who entered into a lease agreement with a bank that was subsequently taken into receivership by the FDIC, brought suit against the assuming bank who received the assets pursuant to a P&A Agreement with the FDIC. *Id.* at 930. The Eleventh District upheld the district court's ruling that the plaintiff/lessor could not enforce the P&A Agreement against the assuming bank, under federal common law, because it is not an intended third-party beneficiary of that contract. *Id.* In so doing, the Court noted that only a party to a contract or an intended third-party beneficiary may sue to enforce the terms of a contract, and that Government contracts, such as the P&A Agreement, "often benefit the public, but individual members of the public are treated as incidental beneficiaries unless a different intention is manifested." *Id.* at 933 (*citing* Restatement (Second) of Contracts §313(2) cmt.a). Finally, the Court indicated that the lessor's "task of demonstrating 'clear intent' is made significantly more difficult by . . . section 13.5 of the P&A Agreement [that] expressly disclaims any intent to create third-party beneficiaries." *Interface Kanner v. JPMorgan, supra,* 704 F.3d at 933. The Court found that the P&A Agreement does not provide a "clear intent" to benefit the lessor, and concluded that the lessor "is not an intended third-party beneficiary to the P&A Agreement and cannot sue to

enforce it." *Id.* In so doing, the Eleventh Circuit relied on a Ninth Circuit ruling in an "almost identical case" which concluded that the P&A Agreement did not confer a benefit on the landlord, by finding that the reliance on the assumption language in the P&A Agreement "does not evince the specificity required to carve out enforceable rights as contemplated by section 13.5," nor does it "show the 'clear intent' needed to rebut the presumption that [the landlord] is merely an incidental beneficiary." *Id.* (*quoting GECCMC v. JPMorgan Chase Bank*, 671 F.3d 1027, 1034 (9th Cir. 2012)); *see also Hillside Metro Associates, LLC v. JPMorgan Chase Bank, Nat. Ass'n*, ___ F.3d ___, 2014WL401303 (2nd Cir. February 4, 2014).

In response, MidCities refers me to *Excel Willowbrook, L.L.C v. JP Morgan Chase Bank, Nat. Ass'n,* ___ F.3d ___, 2014WL1633508 (5th Cir. April 24, 2014), in which the Fifth Circuit recently faced the same issue of "whether the [Plaintiff/]Landlords qualify as intended beneficiaries to the P&A Agreement, in which case they have a contractual right to enforce [the assuming bank's] promise to assume [the failing bank's] obligations under the Leases." *Id.* The Fifth Circuit opinion questioned the rulings in *Interface Kanner v. JPMorgan, supra* and *GECCMC v. JPMorgan Chase, supra, on the basis that* the assuming bank not only accepted the FDIC's assignment of the failed bank's interest in the Leases, but also "expressly assume[d]" and "agree[d] to pay, perform, and discharge" all of the failed bank's liabilities (including the obligations under the leases) in the P&A Agreement. As such, the Court indicated that "the Landlords appear to be quintessential creditor beneficiaries to the P&A Agreement." *Id.* Furthermore, while the P&A Agreement contains a clause disclaiming any intention to create third-party beneficiaries, the Court noted that "the no-beneficiaries clause is qualified by the modifying phrase 'except as otherwise specifically provided in this Agreement,'" and the

11

assuming bank's "unqualified promise to "expressly assume[ ] . . . and agree [ ] to pay, perform, and discharge" all of the failed bank's obligations "is arguably tantamount to 'specifically' designating the Landlords as creditor beneficiaries." *Id.* Finally, the Court found that "affording the Landlords enforcement rights on the narrow facts of this case would not open the floodgates, as the class of persons entitled to third-party beneficiary status would remain exceedingly narrow and subject to the FDIC's control." *Id.* Thus, the Fifth Circuit concluded that if "[w]e were writing on a blank slate, we would conclude that the Landlords are creditor beneficiaries to the P&A Agreement and therefore have a contractual right to enforce [the assuming bank's] promise to assume the Leases." *Id.* However, "in the interest of maintaining uniformity in the construction and enforcement of federal contracts" the Court followed the established precedent, and held that the Landlords did not qualify as third-party beneficiaries. *Id.* The Court went on to affirm judgment in favor of the Landlords on different grounds – specifically, that the Landlords proved privity of estate which, in turn, gives them the right to enforce the "real covenants" of rent and taxes. *Id.*

Without discounting the analysis and reasoning of the Fifth Circuit, I likewise conclude that I am to follow the legal authority of *Interface Kanner v. JPMorgan, supra* and *GECCMC v. JPMorgan Chase, supra*, and rule that MidCities is not a third party beneficiary to the P&A Agreement. As such, they have no standing to either enforce or seek interpretation of the P&A agreement at issue here. In so doing I reject MidCities argument that it is not attempting to enforce the terms of the P&A Agreement via third-party standing, but rather, it seeks to enforce its contractual rights under the Deed. It is clear that MidCities seeks and interpretation of the terms of the P&A Agreement that, as a matter of law, USBank assumed the obligation of Section

2.1 of the Deed. Because MidCities lacks standing to assert its new contract claim, its proposed amendment to the complaint is futile. *See Hutchinson v. Pfeil,* 211 F.3d 515, 523 (10th Cir. 2000)(upholding the ruling that the plaintiff's proposed new claim of negligent misrepresentation was futile on the basis that he lacked Article III standing).

Because I have determined that MidCities does not have standing to bring its new contract claim, I do not reach USBank's alternative arguments that the new proposed claim is not plausible in that: 1) the "evidence" is insufficient – as a matter of law – to conclude that the FDIC assumed the obligation to pay the Shortfall Amount set forth in Section 2.1 when First Community Bank was placed into receivership by the FDIC in January of 2011; and 2) the conclusion that USBank, in turn, expressly assumed the Section 2.1 obligation in its P&A Agreement with the FDIC – as a "Related Liability" – is not a viable interpretation of the P&A Agreement.

ACCORDINGLY, I DENY the Motion for Leave to File Amended Complaint [**Doc #29**] filed pursuant to Fed. R. Civ. P. 15(a)(2) by Plaintiff, MidCities Metropolitan District No. 1 ("MidCities"), seeking leave to amend its complaint to add a breach of contract claim against Defendant, U.S. Bank National Association ("USBank"), on the basis that it is untimely, prejudicial, and futile.

Dated: May   15  , 2014 in Denver, Colorado.

                                        BY THE COURT:

                                          s/Lewis T. Babcock
                                        LEWIS T. BABCOCK, JUDGE